IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEGGY MEASE, | : | |
|     *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 17-2327 |
| | : | |
| NANCY A. BERRYHILL, Acting | : | |
| Commissioner of Social Security, | : | |
|     *Defendant*. | : | |

**Jones, II    J.**                                                                                                                      **December 12, 2018**

## MEMORANDUM

Before the Court are the Objections of Plaintiff Peggy Mease ("Mease"), (ECF No. 15 [the "Objections"]), to the Report and Recommendation of the Honorable Thomas J. Rueter, United States Magistrate Judge. (ECF No. 14 [the "R&R"]). After careful consideration of the full record, the Court overrules the Objections, adopts the Honorable Thomas J. Rueter's R&R in its entirety, and denies Mease's Request for Review.

## STANDARD OF REVIEW

Objections to the R&R are entitled to *de novo* review. 28 U.S.C. § 636(b)(1)(C). However, the review of a final decision of the Commissioner of Social Security ("Commissioner") is deferential and is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382(c)(3); *see also Jenkins v. Comm'r of Soc. Sec.*, 192 F. App'x 113, 114 (3d Cir. 2006). Substantial evidence is difficult to precisely define; it "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 522, 565 (1988)). In terms of the traditional burden of proof standards, substantial evidence is "more than a mere scintilla but may

1

be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971). In determining whether substantial evidence exists to support the decision of an Administrative Law Judge ("ALJ"), this Court must consider all evidence of record, regardless of whether the ALJ cited to it in his decision. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981). The Court may not overturn the ALJ's findings simply because it would have "decided the factual inquiry differently." *Gaddis v. Comm'r of Soc. Sec.*, 417 F. App'x 106, 107 n.3 (3d Cir. 2011). Where substantial evidence supports the ALJ's findings, the Court is bound to affirm. *Id*.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. BACKGROUND

Mease is a fifty-eight-year-old woman who previously worked as a baker, bartender, cook, packer, and plumbing assistant. (ECF No. 7-2 – Administrative Record [hereinafter, "R."], pp. 21, 161). She filed an initial application for disability insurance benefits on October 8, 2013, alleging an onset of disability on December 31, 2006. (*Id*., 16, 49, 54, 140-46). She sought benefits based on mild degenerative changes to the acromioclavicular joint, small joint effusion, generalized arthritis, fibromyalgia, and rotator cuff tendinitis. (*Id*., 207-08; ECF No. 10, p. 2). Mease's initial application for disability benefits was denied after a finding that she was not disabled. (*Id*., 53). She timely requested a hearing before an ALJ, which was held on June 16, 2015 before the Honorable Randy Riley. (*Id*., 31).

In February 2005, Mease began seeking treatment from Dr. Jeffrey E. Packer for "diffuse arthritis" and "pelvic pain." (R. 387). After reviewing a total body bone scan, Dr. Packer found that Mease had arthritis throughout her body. (*Id*.). He also noted "mildly increased activity at the acromioclavicular joints bilaterally," but did not find this to be significant. (*Id*.). Several

2

months later, on November 7, 2005, Mease saw Dr. Michael Shipman for a sudden onset of back pain. (*Id*., 210). He diagnosed her with a lumbosacral strain after observing tenderness in the lumbar sacral region and noting that Mease's work as a plumber's assistant required "quite a bit" of lifting and bending. (*Id*., 210). Unable to ascertain the exact origin of Mease's symptoms, he prescribed her Levaquin, Flexeril, Motrin, and Darvocet for potential urinary tract symptoms, muscle spasm, and pain. (*Id*., 210).

In July 2006, Mease began seeing Dr. Anthony Mastropietro for several problems, including "severe . . . generalized pain throughout particularly her left shoulder . . . [a] history of hematuria," which may have resulted from "the presence of what appear[ed] to be ureterocle on the right and bladder diverticulum on the left," and "tremendous tenderness . . . when [he] palpated her typical trigger point for fibromyalgia in the mid clavicular line both posteriorly and anteriorly . . ." (*Id*., 208). He recommended that she get an MRI on her left shoulder, referred her to another physician for an evaluation of her hematuria, started her on Cymbalta, and told her to continue with non-narcotic analgesic medications.[1] (R. 208-209). Dr. Mastropietro diagnosed Mease with generalized arthritis, fibromyalgia, rotator cuff tendinitis, and hematuria with ureterocele and bladder diverticulum. (*Id*. 208). He saw her for a follow-up appointment in August 2006 to give her an injection for the pain in her left shoulder, which provided "significant improvement." (*Id*., 209). He noted, however, that another injection may be needed in the future due to some evidence of arthritis on the x-ray. (*Id*.).

---

[1] Mease stated in her Function Report that she took 4-6 Tylenol per day, but she could not recall when she began to do so. (R. 177).

There is no record evidence that Mease sought medical care again until April 2011. At that time, Dr. Shipman saw Mease again as a new patient complaining of an onset of pain in her right shoulder within the last six months. (*Id*., 237). He noted her prior history of pain in the left shoulder but did not state that Mease had any present complaints regarding that shoulder. (*See id*., 237-39). After diagnosing Mease with joint pain and compression arthralgia of the right shoulder, he prescribed her Prednisone. (*Id*. 239). Dr. Shipman next saw Mease in May 2012 to help her fill out a medical assistance form and to assess her multiple sites of joint pain, arthralgia, and pain in the right hip and right shoulder. (R. 231, 234). He noted that she had decreased range of motion in the right shoulder, tenderness in her right hip on rotation, and ordered a "work up" for compression arthralgia. (*Id*. 231, 236). In June 2012, Dr. Shipman reviewed x-rays of Mease's right hip and right shoulder obtained by physicians at Lancaster General Health on May 31, 2012. (*Id*., 229, 248, 271). He diagnosed her with compression arthralgia of the right shoulder, right hip, right femur and pelvis after observing "moderate degenerative changes of the right hip" and "mild generative changes" to her right shoulder. (*Id*., 248, 271).

Mease also sought treatment from Orthopedics Associates of Lancaster from June 2012 until June 2013 for degenerative joint disease of the right hip and right knee and greater trochanteric bursitis. (*Id*. 448-556). In October 2012 she had a tear of the right rotator cuff successfully repaired under their care (*Id*. 487). In January 2013 she obtained an elective total right hip arthroplasty, for "right hip arthritis which is severe and intolerable." (*Id*. 468, 484). At a three-month follow-up appointment, Mease reported "that [she was] not having any pain in her hip. [But] does continue to have some numbness and burning sensation over the lateral upper thigh." (R. 458).

During the post-operative care for her hip replacement, Mease reported that the ongoing pain in her right knee had become more noticeable after the surgery. (*Id*., 458). She expressed experiencing constant pain about the anterior aspect of her knee and around her patella when walking and going upstairs. (*Id*., 452, 458). She wore a neoprene sleeve to help with discomfort and instability. (*Id*. 458, 461, 468). As of May 2013, a physical examination of her right knee showed no swelling, erythema, ecchymosis, or pain with range of motion. (*Id*., 453). However, she did have tenderness over the medial joint line. (*Id*.). Consequently, Mease received a cortisone injection in her right knee in April 2013 and again in June 2013 after reporting that the shot she received in April only gave her relief for a week. (R. 452).

At the hearing before the ALJ, Mease testified that from 2007 through 2009 she "felt terrible" and "couldn't get out of bed in the morning . . . [or] do the normal things that [she] wanted without being in pain." (*Id*., 32-34). She had pain in her knees, hips, and shoulders – though her pain was primarily located in her right hip and shoulder. (*Id*., 36). Mease stated that, "before she had [her] hip replaced [she] could barely walk. It was hard to even sleep or sit." (*Id*., 38). On her good days, during this period, Mease "could get the house cleaning done," though "[n]ot all at one time." (*Id*., 37). For example, she could vacuum one floor, but would then need to take a break. (*Id*.). Or she could stay standing to wash dishes for fifteen minutes before needing to rest. (R. 37). To accommodate the bad days, Mease developed a schedule of cleaning the house on every third day. On the days in between she would do very little except for sit. (*Id*., 38). During this period, Mease testified that she didn't go grocery shopping, take part in recreational activities, or even visit friends and family. (*Id*., 39-40). In the event she had to go to the store for something small, like a loaf of bread, the most she could do was walk a city block to a store down the street. (*Id*.,

5

42).² Doing so would require at least ten minutes of rest. (*Id*.). After her husband took over the shopping she would help bring the groceries into the house by taking them from the door to the counter, however the most she could hold at any one time was a gallon of milk, loaf of bread, or pack of eggs. (R. 41). Mease summarized her pain from December 31, 2006 until the present, as a constant state of being "sick and tired of being sick and tired." (*Id*., 33).

A vocational expert, who had reviewed Mease's file, testified at the hearing after being present for her testimony. The ALJ asked the vocational expert to consider whether a person of Mease's age, education, and work experience who could only do light work and never could reach overhead, climb a ladder, or crawl, would be able to perform any of Mease's past relevant work. (*Id*., 45). The vocational expert testified that an individual with those limitations could perform Mease's past relevant work as a short order cook and bartender. (*Id*.)

## II.  THE ADMINISTRATIVE LAW JUDGE'S DECISION

After reviewing the entire record in light of the five-step, sequential evaluation set forth in 20 C.F.R 404.1520(a), the ALJ ultimately found that Mease was not disabled. (*Id*., 23). As to the first two prongs, the ALJ found that Mease last met the insured status requirements of the Social Security Act ("SSA") on December 31, 2009 and had not engaged in substantial gainful activity from her alleged date of onset until the date last insured. (*Id*., 18).

At step three, the ALJ found that from the date of onset through the date last insured – the relevant time period – Mease suffered from three severe impairments, including: "arthritis, [pain in the] left shoulder, and fibromyalgia." (*Id*., 18). The ALJ reached this finding after first determining that any medical evidence of record "after December 31, 2009 was not relevant"

---

² Mease stated on her Function Report – that she could walk "a few city blocks." (R. 173).

6

because it related to a period after the date Mease was last insured. (R. 21). The ALJ then compared Mease's severe impairments to those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and found they did not equal in severity, which required that he conduct an residual functional capacity ("RFC") assessment. (*Id.*)

In conducting the RFC assessment, the ALJ considered the medical evidence of record prior to the date Mease was last insured, opinion evidence – including that of a vocational expert – and Mease's subjective complaints about her symptoms and pain. (*Id.* 19-21). The ALJ noted that the medical records prior to August 2006 showed that Mease:

> . . . complained of generalized pain throughout her body, particularly in the left shoulder. Upon examination she was unable to abduct the left shoulder and was in a great deal of discomfort. Palpation of typical trigger points for fibromyalgia revealed tremendous tenderness. Diagnoses included generalized arthritis and fibromyalgia. MRI of the left shoulder revealed some degenerative change at the acromioclavicular joint. Cymbalta and an August 2006 injection provided significant improvement.

(*Id.*, 20-21). As far as Mease's subjective complaints and description of her daily activities, the ALJ specifically noted that she:

> reported difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing. She testified that, during the time-period in question, she was unable to get out of bed and do normal things due to pain. She estimated that she was able to stand for only 15 minutes at a time, walk 1 block, and carry a gallon of milk. She would nap in the afternoons. Her husband shopped for groceries during that time. She indicated that her surgery improved her pain. Despite these allegations the claimant reported that she was able to perform personal care, prepare meals, perform household chores, and go out alone.

(R. 20; *see also*, ECF No. 7-6).

After acknowledging that the "subjective evidence of incapacity is an important consideration in determining disability," the ALJ ultimately found that "the objective medical evidence . . . cannot be fully reconciled with the level of pain and limiting effects of the

7

impairments that the claimant has alleged." (R. 20). The ALJ noted that "[t]he record contains very little medical evidence for the time-period in question," and that "[t]reatment notes in the record did not sustain [Mease's] allegations of disabling pain and limitations." (*Id*., 20-21). Moreover, Meases's daily activities "were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which weaken the credibility of her allegations." (*Id*., 19-20).

Thus, after considering the testimony of a vocational expert, the ALJ determined that Mease "had the residual functional capacity to perform light work . . . which consists of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently." (*Id*., 19, 21). He further found that Mease could perform past relevant work as a bartender and short order cook in accord with the opinion of the vocational expert. (*Id*., 21, 45).

Mease timely filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's denial of her claim for disability benefits. (ECF No. 1-1). Afterward, she filed a Brief Statement of Issues in Support of Request for Review (ECF No. 10), to which the Commissioner responded (ECF No. 11). After Mease filed a Reply to the Commissioner's response (ECF No. 12), this Court referred the matter to the Honorable Thomas J. Rueter for a Report and Recommendation. (ECF No. 15).

## DISCUSSION

### III. PLAINTIFF'S OBJECTIONS

Mease objects to the R&R on two grounds. First, she argues that substantial evidence does not support the ALJ's finding at step two that the degenerative joint disease of her right hip and right knee were not severe impairments. (ECF No. 10, pp. 4-6; ECF No. 15, pp. 1-2). Second,

she alleges that the ALJ inappropriately discredited her subjective allegations based on a lack of corroborating objective medical evidence and an improper use of Mease's daily activities to undermine the severity of her symptoms. (ECF No. 10, pp. 8-11; ECF No. 15, pp. 2-3).

**IV.  THE COMMISSIONER'S RESPONSE TO DEFENDANT'S OBJECTIONS**

The Commissioner did not file a response to the Objections.

**V.  SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S STEP-TWO EVALUATION**

After conducting a *de novo* review of the entire record, the Court agrees with the Honorable Thomas J. Reuter that substantial evidence supports the ALJ's step-two findings. The ALJ did not err by not finding that Mease's degenerative joint ailments in her right hip and right knee were not severe impairments.

### A. The Joint Pain in Mease's Right Hip and Right Knee Were Not Severe Impairments as of Her Date Last Insured

Mease claims that the ALJ failed to classify the degeneration in her right knee and right hip as severe impairments. (ECF No. 15, pp. 1-2). Relying upon medical records from April 2011 through June 2013, she argues that the ALJ "should have considered that degeneration of the right hip and right knee did not occur overnight." (*Id.*). Thus, although not expressly stated, Mease argues, at least in part, that the ALJ erred by not considering medical records from after the date she was last insured.

The SSA's regulations require that a claimant for disability insurance benefits establish that she became disabled on or before the date she was last insured. *See* 42 U.S.C. §§ 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.130, 404.315(a)(1). In assessing whether a claimant has met her burden in this regard, an ALJ is not required to consider any medical evidence or treatment notes that post-

date when a claimant was last insured. *Ortega v. Comm'r of Soc. Servs.*, 232 F. App'x 194, 197 (3d Cir. 2007).

Accordingly, the ALJ appropriately found that the only relevant medical evidence provided by Mease in support of her claims were those records from her doctor's visits from February 2005 through August 2006, with Drs. Shipman, Smith, and Mastropietero. The remainder of the records provided by Mease post-date when she was last insured, and the ALJ was not required to consider them. Moreover, even taking into consideration medical records dated after December 31, 2009, as the Court was required to do in its *de novo* review of the entire record, the Court still finds that the degeneration to Mease's right hip and right knee were not severe as of the date she was last insured.

The Court is mindful that the "burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Mease must demonstrate that an impairment was severe, *see Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987), and it significantly limited her ability to do basic work activities. *Salle v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144-45 (3d Cir. 2007). However, reasonable doubts regarding the severity of the impairment must be resolved in her favor. *McCrea*, 307 F.3d at 360. Moreover, the Court bears in mind that the purpose of considering Mease's daily activities, the location duration frequency, and intensity of her pain, measures she used to alleviate her pain, and the other factors set forth in 20 C.F.R. 404.1529(c) and Social Security Regulation 96-7p,[3] in part, is an understanding that objective medical evidence alone may not fully show the severity of an impairment.

---

[3] As noted in the R&R, in March 2016 the SSA issued S.S.R. 16-3p, which superseded S.S.R. 96-7p. (*See* ECF No. 14, p. 4). As both versions of this regulation set forth the same factors that must be considered when assessing a claimant's subjective allegations of symptoms and pain, the Court will refer to S.S.R. 96-7p because it was the version in effect at the time of the ALJ's decision in July 2015.

Prior to August 2006, Mease sought medical treatment for self-reported pain in her left shoulder, back, and the right side of her abdomen. (*See* ECF No. 10, p. 2; R. 207-10). After various tests and x-rays she was diagnosed with a lumbosacral strain, generalized arthritis, fibromyalgia, rotator cuff tendinitis, and hematuria. (R. 207-210). She did not complain to any of her treating physicians during this period about any pain to her right hip or right knee.

Indeed, there is no objective medical evidence specifically referring to the degeneration in her right hip and right knee until years after the date she was last insured. In May 2012, Mease obtained an x-ray that showed "moderate degenerative changes of the right hip" (*Id.*, 248, 271). A physical examination during the same period showed some tenderness to her right hip upon rotation. (*Id.*, 231, 236). Mease later obtained an elective total right hip arthroplasty, for "right hip arthritis which is severe and intolerable" in January 2013. (R. 484). As to her right knee, in April 2013, Mease reported to her treating physician that the pain in her right knee became more noticeable after her hip replacement. (*Id.*, 458). A physical examination of that knee the following month showed tenderness over the medial joint. She received cortisone injections in April and June 2013 for pain. (*Id.*, 452-53).

The only direct evidence regarding the degeneration to Mease's right hip and right knee during the relevant time period of December 31, 2006 through December 31, 2009, comes from Mease's testimony before the ALJ. She testified to having pain in her knees, hips, and shoulders – though her pain was primarily in her right hip and shoulder. (R. 36). She said that her "knees always have been problems but now the right knee is just as bad because of everything just giving up on [her]." On good days, Mease said she was unable to lift anything more than a gallon of milk, could only walk a city block without rest, and had to take breaks in between doing household chores such as vacuuming and washing dishes. (R. 37-42). On bad days, which occurred the

11

majority of the week, she could do no more than sit as she tried to find a comfortable position. (R. 38).

Thus, Mease is asking the Court to infer that the degeneration of her right hip and right knee constituted a severe impairment as of December 31, 2009 based on diagnoses from 2006, treatment from 2013, and her testimony from 2015 about how she felt from 2007 through 2009. The Court is unable to do so.

At base, although Mease's burden at step two is not exacting, she must still prove that an impairment was severe as of the date she was last insured. Evidence of a medical condition that began during the insured period and evidence of treatment years after she was last insured does not meet this burden. *See Capoferri v. Harris*, 501 F. Supp. 32, 36 (E.D. Pa. 1980), *aff'd* 649 F.2d 858 (3d Cir. 1981); *see also Hyler v. Colvin*, 2013 WL 3766817, at *9 (E.D. Pa. July 18, 2013). Moreover, setting aside the lack of objective evidence supporting her subjective allegations of pain, Mease's own testimony militates against a finding that the joint disease in her right hip and right knee were severe as of December 31, 2009.

First, Mease testified that during the relevant time period, the majority of her pain was in her right hip and right shoulder – not her right knee. (R. 36). Indeed, she only received cortisone shots in her right knee after reporting that the replacement of her right hip had caused an increase in pain to that knee. (*Id*., 458). Additionally, Mease testified that although her knees had always given her problems "***now*** the right knee is just as bad . . ." (*Id*., 36). This testimony, given in 2015, also belies Mease's assertion that the degeneration in her right knee constituted a severe impairment as of December 31, 2009.

Second, as to her right hip, an x-ray taken two and half years after the date Mease was last insured only showed "moderate degenerative changes," and a physical examination only showed some tenderness upon rotation. (R. 23, 236, 248, 271). Although Mease ultimately underwent a total replacement of that hip, the Court cannot ignore that it was an elective procedure obtained three years after the date she was last insured. (*Id.*, 484)

Third, the Court took into consideration that Mease was not insured during the relevant time period and therefore was unable to obtain contemporaneous medical evidence to substantiate her claim. However, Mease began to receive medical treatment for unrelated issues in April 2011, yet there is no record of a complaint about her right hip or right knee until over a year later. This does not comport with Mease's assertions that she'd been experiencing a severe level of impairment to her right hip and right knee for the previous two years.

Thus, Mease's subjective allegations regarding her right knee and right hip cannot be reconciled with her own contradictory testimony, an absence of contemporaneous complaints to her treating physicians, and an absence of corroborating medical evidence. With these deficiencies, it is not reasonable for the Court to infer that the degenerative disease in her right hip and right knee were severe as of the date she was last insured. Accordingly, the Court agrees with the Honorable Thomas J. Reuter's finding that substantial evidence supports the ALJ's step two evaluation.

## VI. THE ALJ CONDUCTED A PROPER SYMPTOM EVALUATION

Mease next objects that the ALJ inappropriately relied upon a lack of corroborating objective medical evidence and Mease's testimony about daily activities to find her subjective complaints about her symptoms and pain were not fully credible. The Court finds that the ALJ's thorough assessment of Mease's symptoms are without fault.

As an initial point, it is within the province of the ALJ to evaluate the credibility of witnesses. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). An ALJ's "findings on the credibility of claimants 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'" *Irelan v. Barnhart*, 243 F. Supp. 2d 268, 284 (E.D. Pa. 2003). Under Third Circuit law, an ALJ must consider statements of a claimant concerning her symptoms, but the ALJ is not required to credit them. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (*citing* SSR 96-7p, 20 C.F.R. § 404.1529(a)). An ALJ may disregard a plaintiff's subjective complaints where there is contrary evidence of record, so long as the ALJ provides his reasons for doing so. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000); *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990) (noting that an ALJ may reject a claim of disabling pain where he has considered subjective complaints and specified reasons for rejecting the claim).

Here, the ALJ's credibility finding warrants deference. Only after balancing the objective medical evidence, vocational expert testimony, and Mease's subjective allegations of her symptoms and pain, did the ALJ determine that "the evidence cannot be fully reconciled with the level of pain and limiting effects of the impairments that [Mease] has alleged." (*Id.*, 20). In his consideration of Mease's symptoms, the ALJ noted that "a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." (*Id.*, 19). Consequently, he considered the credibility of Mease's statements about her: (1) daily activities; (2) the location, duration, frequency, and intensity of her pain and symptoms; (3) factors that precipitate and aggravate her symptoms; (4) the type, dosage, effectiveness, and side effects of medication she took to alleviate her pain and symptoms; (5) treatment, other than medication, that she received to relieve her pain and symptoms; (6) measures

other than treatment she used to relieve her pain and symptoms; and (7) any other factors regarding the functional limitations and restrictions caused by her symptoms, in accordance with 20 C.F.R. 404.1529 and S.S.R. 96-7p.

> Indeed, the ALJ specifically noted that Mease reported:
>
> difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing. She testified that, during the time-period in question, she was unable to get out of bed and do normal things due to pain. She estimated that she was able to stand for only 15 minutes at a time, walk 1 block, and carry a gallon of milk. She would nap in the afternoons. Her husband shopped for groceries during that time.

(R. 20).

However, when the ALJ considered Mease's subjective allegations in conjunction with the other relevant evidence of record, he found that her subjective allegations were not fully credible. (*Id*. 20). Based upon his review of the relevant evidence of record, Mease's "description of her daily activities were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id*., 21). Moreover, "the medical evidence does not support the alleged level of limitation arising from [her severe] impairments." (*Id*., 20). The ALJ found that although Mease suffered from severe impairments of arthritis, left shoulder pain, and fibromyalgia, the record demonstrated her ability "to perform many basic activities associated with work." (R. 21). Thus, the ALJ did not discredit Mease's allegations because there was no supporting medical evidence. Nor did he find that she could perform work with a "light" exertional level solely based on her ability to perform certain daily activities. The ALJ considered the totality of the relevant evidence of record and found that Mease did not have a statutorily defined disability. The Honorable Thomas J. Reuter affirmed this finding, and the Court agrees for the reasons set forth herein and in Section V of this Opinion.

15

**VII. CONCLUSION**

For the foregoing reasons, the Court will approve and adopt the R&R in its entirety and deny Mease's Request for Review as set forth in the accompanying Order.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II    J.